ROGERS, Circuit Judge, dissenting.
Our review of factual determinations in asylum cases is of course very limited. In this case, however, the primary stated bases for questioning Lin’s credibility cannot reasonably be read to support the adverse credibility determination.
The BIA relied on Lin’s first stating that his wife was forced to wear an IUD after the birth of his second child, but later correcting himself after prompting from his attorney. This description exaggerates what was obviously a brief misstatement in an otherwise consistent articulation that Lin’s wife was forced to get an IUD after her first child, and forced to be sterilized after her second. Lin first testified that after his first child’s birth, “they took my wife to the hospital to have IUD.” JA. at 173. Later, the testimony ran as follows:
Q. What happened to you in China?
A. The reason I came to the U.S. is because after the second child, my wife was forced to have IUD insertion and that’s why I came here to seek for political asylum.
Q. When was, after April 10, 2001, what exactly happened?
A. After the second child was born, my wife was forced to have sterilization.
Q. Sir, immediately after your first or your second child, what happened?
A. After the second daughter was born and she was forced to have sterilization and afterwards she has all kinds of physical conditions, the headache, the backache and all that stuff and she cried a lot and she’s only 28 and she suffered these physical condition.
Q. How did you feel about having two daughters, sir?
A. I’m very (indiscernible).
Q. Sir, you stated that your wife had an IUD after her second child. When was this? You said your wife had an IUD after your second child. When was this?
A. After the second child was born, she got sterilized, sterilization.
Q. Was this a mistake, sir? Withdrawn. Sir, a moment ago you said your wife had an IUD after the second child. Was this a mis-statement? Did you mis-speak?
A. Well, no, my, after the first daughter was born, she was inserted the IUD and then after four years then we were allowed to have a second child.
J.A. at 177-78. The misstatement that the IUD insertion was forced after the second child was immediately corrected without prompting and consistently maintained thereafter. Therefore, the transcript can be fairly read only to show a brief instance of misspeaking.
*479 The IJ also inferred incredibility from Lin’s testimony that he and his wife returned to their village after the birth of their second child despite having knowledge that a sterilization order had been issued for his wife. The IJ chose to disbelieve Lin’s contention that he and his wife selflessly returned to their village so that the authorities would release Lin’s mother from detention because the IJ found such behavior on the part of Lin and his wife to be “improbable.” There is, however, nothing incredible or improbable about Lin’s argument. Individuals commonly sacrifice themselves for the benefit of loved ones. Nothing indicates that this did not happen in this instance other than the IJ’s personal belief that it was improbable that Lin and his wife would return to their village under such circumstances. Such personal belief does not satisfy the substantial evidence standard. See Bandari v. INS, 227 F.3d 1160, 1167 (9th Cir.2000) (citing Shah v. INS, 220 F.3d 1062, 1071-72 (9th Cir. 2000)).
The obviously erroneous date in the affidavit from Lin’s sister also fails to provide support for the BIA’s decision. The statement in the affidavit that Lin’s wife was sterilized in 1996 is obviously untrue, as a second child was later born. Such an obvious date mistake does not support an adverse credibility inference. Nor can an adverse inference be drawn from the sister’s failure to testify in person. She stated in her affidavit that she was not able to provide live testimony at the hearing, and — other than commenting that she only lived about an hour from the site of the hearing — neither the Government nor the IJ suggested otherwise. Further, Lin testified that his sister could not appear in person because she was very busy and had a young child. That is a believable explanation, especially in light of the fact that his sister probably thought there was no need for her to testify since she had written an affidavit.
Finally, Lin cannot be found incredible on the basis of the documentation that he submitted to prove his wife’s sterilization because there are no inconsistencies created by the documents or his testimony related thereto. Lin submitted two documents as evidence of his wife’s sterilization: (1) a “Birth Control Operation Certificate” that was issued on May, 30, 2001, and was signed by a doctor and sealed by the Family Planning Service Station of LianJiang County; and (2) an “X-Ray Report” that was issued by the Hospital of Fujian Province on June 25, 2002, confirming that Lin’s wife had been sterilized. The dates of those documents pose no problems to Lin’s credibility. Lin did not testify that all of the documentation had been given to his wife at the time of her sterilization. Instead, he tried his best to explain that the Birth Control Operation Certificate had been given to his wife at the time of her sterilization (which is confirmed by the date on that document), and that she had obtained the X-Ray Report later in order to provide further proof or her sterilization. See Administrative R. at 217-18. There is nothing inconsistent about obtaining official documentation at the time of a surgery and then later gathering further medical evidence to support one’s claims. Nor is there anything incredible about the very existence of the documents. The country report, on which the BIA relied, only said that the State Population and Family Planning Commission did not issue certificates of sterilization. That does not mean that such certificates are not issued by other agencies, such as individual hospitals or the Family Planning Service Station of LianJiang County. Moreover, there is no evidence suggesting that the X-Ray Report confirming the sterilization is not authentic.
*480 The other bases for the adverse credibility determination are even less substantial. I would therefore grant the petition for review. Denial of asylum based on the BIA’s adverse credibility determination is not supported by substantial evidence.